FMR Corp. *vs.* Commissioner of Revenue.

Suffolk. April 6, 2004. - May 27, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Taxation,* Corporate excise, Charitable contribution, Federal consolidated return, Combined return.

This court concluded that the Appellate Tax Board correctly ruled that each corporate entity that filed a Massachusetts corporate excise tax return pursuant to G. L. c. 63, § 32B, as a member of a "combined" group was required to deduct its charitable contributions on an individual-entity basis rather than on a consolidated basis, as under the Federal consolidated return regulations. [813-821]

Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*John S. Brown* (*Donald-Bruce Abrams & Matthew D. Schnall* with him) for the taxpayer.

*Anne T. Foley* (*Juliana deHaan Rice,* Assistant Attorney General, with her) for Commissioner of Revenue.

Spina, J. The sole issue in this appeal is whether the Appellate Tax Board (board) correctly ruled that each corporate entity that files as a member of a Massachusetts "combined" group must deduct its charitable contributions on an individual-entity basis rather than on a consolidated basis, as under the Federal consolidated return regulations. For reasons discussed below, we affirm the decision of the board.

1. *Background.* The material facts are not in dispute. At all relevant times, FMR Corp. (FMR) was the parent of a group of affiliated corporations that participated in the filing of a Federal consolidated tax return (consolidated group). FMR was also the principal reporting corporation for the consolidated group, which filed a combined Massachusetts corporate excise tax return pursuant to G. L. c. 63, § 32B.

For each tax year at issue, 1993, 1994, and 1995, FMR filed Federal consolidated returns on behalf of the consolidated group, and timely filed Massachusetts combined returns on behalf of the group. FMR and the Commissioner of Revenue (commissioner) agreed to extend the period for making assessments until September 30, 2000, for each tax year at issue. On May 8, 2000, FMR timely filed an application for abatement for each year at issue, see G. L. c. 62C, § 37, on the ground that the group failed to claim the full amount of charitable deductions to which it believed it was entitled on its Massachusetts combined return. FMR did not consent to the commissioner's failure to act on its applications for abatement within six months, thus they were deemed denied on November 8, 2000. See G. L. c. 58A, § 6. On December 15, 2000, FMR timely filed a petition with the board, appealing the commissioner's deemed denial of its applications.

For each tax year at issue, certain members of the consolidated group had made charitable contributions as defined for purposes of Internal Revenue Code (I.R.C.) § 170 (2000). I.R.C. § 170 permits a corporation to claim a charitable contributions deduction up to ten per cent of its taxable income (with certain adjustments not relevant here). See I.R.C. § 170(b)(2). According to I.R.C. § 170(d)(2), excess charitable contribution deductions not permitted to be claimed in one tax year may be carried forward to the next five succeeding tax years, if necessary. United States Treasury regulations permit members of a group filing a consolidated return to combine their charitable contributions and apply them to their combined taxable income for purposes of calculating the deduction under I.R.C. § 170. See Treas. Reg. § 1.1502-24 (1995). In each year at issue, charitable contributions made by some, but not all, of the individual members of the consolidated group exceeded the limit that would have been imposed pursuant to I.R.C. § 170, if the members had elected to file *separate* Federal income tax returns for those tax years.

For tax year 1993, the total amount of the deductible contributions made by the members of the consolidated group did not exceed the limitation on the deductions imposed pursuant to I.R.C. § 170. The group also had no such deductions carried

over from previous years for Federal tax purposes. As a result, all of the charitable contributions made by group members were deductible on its Federal consolidated return.

For tax year 1994, the total amount of deductible contributions made by the members of the consolidated group exceeded the I.R.C. § 170 limitations; therefore, $68,585,194, or approximately 82.8 per cent of its total contributions, was deductible on its consolidated return. The remaining $14,245,639, or 17.2 per cent, was included in a consolidated "carryover" of charitable contributions for Federal income tax purposes.

For tax year 1995, the total amount of charitable contributions made by the members of the consolidated group was less than the limitations imposed by I.R.C. § 170. In addition, approximately 81.17 per cent of the total carryover deduction from 1994, totaling $11,562,983, was deductible on the Federal consolidated return. The remaining 18.83 per cent of the 1994 carryover deduction was carried over again to the consolidated group's 1996 tax year.

FMR, as the principal reporting corporation for the Massachusetts group, filed Massachusetts combined corporate excise returns and paid taxes on the combined net income of the members of the Massachusetts group. On its original returns for each tax year at issue, FMR calculated the separate taxable net income of each member by claiming separate deductions for the charitable contributions made by each individual member of the Massachusetts group. FMR applied the ten per cent limitation to these charitable contributions on a company-by-company basis, as if each member had filed separate Massachusetts returns. For each tax year at issue, the deductions for charitable contributions that FMR claimed on the Massachusetts combined return totaled less than the deductions that it claimed, and were allowable, on the Federal consolidated return.[1]

FMR later filed amended Massachusetts returns for each tax year at issue, claiming that the charitable contribution deductions for Massachusetts tax purposes should be the same as the

---

[1]In the case of one Massachusetts group member, Fidelity Management & Research Co., however, use of the company-by-company limitation (as opposed to the Federal consolidated rule) increased its 1994 charitable contribution deduction by $2,367,604.

amounts allowed for Federal tax purposes, i.e., up to ten per cent of the *total* taxable income for *all* members. The amounts of tax that FMR requested to be abated in its petition to the board were $2,968,010 for 1993, $1,224,953 for 1994, and $251,663 for 1995. The total abatement requested was $4,444,626.

The board, however, found that "the method employed by FMR on its original returns was the correct method" for claiming the charitable contributions deductions pursuant to a Massachusetts combined tax return.[2] Accordingly, the board issued a decision in favor of the commissioner. On November 17, 2003, FMR filed a timely notice of appeal. We allowed FMR's application for direct appellate review.

2. *Discussion.* In Massachusetts, the procedure for reporting net income by affiliated corporations is usually referred to as a "combined" return (as opposed to a Federal "consolidated" return) "because it combines each of the separately computed 'bottom-line' net incomes or losses as each has been separately apportioned to Massachusetts." A.C. Bailey & W.G. Van Dorn, Taxation § 8:10, at 320 (4th ed. 2000). Corporations that participate in a Federal consolidated return may elect to file a Massachusetts combined return, G. L. c. 63, § 32B, which enables them, whenever practicable, to use some of the same materials in preparing the State excise return as were used to prepare the Federal return. See *State Tax Comm'n* v. *La Touraine Coffee Co.*, 361 Mass. 773, 778 (1972). However, the "primary benefit" of filing a combined return, according to counsel for the commissioner as stated at oral argument, is the use, in some circumstances, of net operating losses (NOLs) among the members of the combined group. See 830 Code Mass. Regs. § 63.30.2 (1993).

Two events in the late 1980's formed the present rules for filing combined returns in Massachusetts: the amendment of G. L. c. 63, § 32B, by St. 1988, c. 202, § 15, and the promulgation

---

[2]In its brief, FMR points to certain omissions and errors in its original Massachusetts returns to challenge the board's finding. These alleged mistakes, however, are not relevant to the issue that is before us, namely, whether it was correct to compute the charitable contributions deduction on a separate as opposed to a consolidated basis.

of 830 Code Mass. Regs. § 63.32B.1 (1989). See A.C. Bailey & W.G. Van Dorn, *supra.* Both clearly evidence the State's intent to depart from the Federal method for filing consolidated returns in certain respects. See *Farrell Enters., Inc.* v. *Commissioner of Revenue,* 46 Mass. App. Ct. 564, 572 & n.17 (1999).

a. *G. L. c. 63, § 32B.* Section 32B governs combined returns of income by two or more domestic business or foreign corporations. The statute provides, in relevant part, that if such corporations participated in the filing of a Federal consolidated return, "the net income measure of their excises imposed . . . may, at their option, be assessed upon their combined net income." The statute goes on to specify how the "combined net income" is to be determined:

> "(*a*) the taxable net income of *each* such corporation apportioned to this commonwealth pursuant to the provisions of section thirty-eight *shall first be separately determined*; and (*b*) the taxable net income of each such corporation, as so determined, shall then be added together and shall constitute their combined net income taxable under this chapter" (emphasis added). *Id.*

The above method for establishing combined net income was added by St. 1988, c. 202, § 15. The amendment "inaugurated, or at least made plain," a "separateness concept" for combined tax returns in Massachusetts. See A.C. Bailey & W.G. Van Dorn, *supra* at 322. In 1999, the Appeals Court decided *Farrell Enters., Inc.* v. *Commissioner of Revenue, supra,* which provides instruction as to the sequence of calculations to be used in determining a group's combined net income:

> "First, the taxable net income of each group member must be 'separately determined.' Section 32B, par. second (*a*). The computation of an individual member's taxable net income begins with a calculation of its gross income as defined in G. L. c. 63, § 30 (3) . . . . See *PMAG, Inc.* v. *Commissioner of [Revenue],* 429 Mass. 35, 39 (1999) ('[t]he starting point for calculating the corporate excise tax in Massachusetts is Federal gross income'). Once a corporation's gross income is determined, its 'net income' must then be calculated. Net income is defined in G. L.

c. 63, § 30 (4) . . . as 'gross income less the deductions, but not credits, allowable under the provisions of the Federal Internal Revenue Code.' . . . *When all of a corporation's deductions have been subtracted,* thereby determining its net income, its 'taxable net income' is then calculated by making certain adjustments as set forth in G. L. c. 63, § 38 (*a*) [not relevant here]. The corporation's taxable net income must then be apportioned by determining the amount of income derived from business that is taxable within Massachusetts . . . . This process is repeated for each member of the corporate group. Then, as set forth in § 32B, par. second (*b*), the apportioned, taxable net incomes of all of the individual members are merely 'added together' to determined the group's combined taxable net income. In sum, the calculation . . . requires a simple mathematical addition of the apportioned, taxable net incomes of the individual members . . . ." (Footnotes omitted.)

*Id.* at 567-568.

b. *830 Code Mass. Regs. § 63.32B.1(7)(a).* On June 23, 1989, the commissioner promulgated a regulation contemporaneous with the amendment of § 32B. The regulation, 830 Code Mass. Regs. § 63.32B.1(7)(a), reiterates the requirement of the statute by providing that "[e]ach member of the combined group shall first separately determine its 'taxable net income,' as defined in [G. L. c.] 63, § 38 (*a*), as if it were filing a separate return." 830 Code Mass. Regs. § 63.32B.1(7)(a). It goes on to declare:

> "*Modifications* to the separate taxable incomes of federal consolidated group members under Treas. § 1.1502-12 [which provides, inter alia, that no deduction for charitable contributions under § 170 shall be taken into account when computing separate taxable income] . . . *are not used when determining the Massachusetts net income of combined group members* . . . . The net income of each corporation should, if necessary, be adjusted to compensate for any such federal modifications." (Emphasis added.)

830 Code Mass. Regs. § 63.32B.1(7)(a)(1). This provision,

§ 63.32B.1(7)(a)(1), clearly indicates an intent to depart from the Federal treatment of a combined group as a single entity. See *Farrell Enters., Inc.* v. *Commissioner of Revenue, supra* at 572 n.17.

c. *Treatment of deduction for charitable contributions.* The parties do not dispute that G. L. c. 63, § 32B, requires each member of the Massachusetts group to calculate separately its net income figure before these figures are combined.[3] "The language [of § 32B] does not specifically address every possible computational issue, however." A.C. Bailey & W.G. Van Dorn, *supra* at 322. The question we must decide is whether the board correctly ruled that each corporate entity that files as a member of a Massachusetts combined group must deduct its charitable contributions on an individual-entity basis, i.e., before the separate income figures are combined, rather than as a consolidated entity as provided under the Federal procedure.

I.R.C. § 170 allows for a deduction for charitable contributions by a corporation within a taxable year. In filing its Federal consolidated return, FMR relied on certain regulations, including Treas. Reg. §§ 1.1502-12 and 1.1502-24, both of which refer to I.R.C. § 170. Treasury Regulation § 1.1502-12 provides that the calculation of separate income (required for a consolidated return) is subject to a list of "modifications." One modification is that "[n]o deduction under [§] 170 with respect to charitable contributions shall be taken into account." Treas. Reg. § 1.1502-12 (l). Rather, the deduction is determined on a consolidated basis, i.e., by aggregating the contributions of the individual members with excess contribution amounts carried over from a previous taxable year, subject to a ten per cent limitation based on the group's consolidated taxable income.

---

[3]According to the board, the parties agreed that G. L. c. 63, § 32B, "requires that the net incomes of each member of the Massachusetts group must be separately calculated before they are combined *and apportioned to Massachusetts*" (emphasis added). The amended version of the statute, however, "makes it clear that apportionment shall be done 'first,' " i.e., before the combining of the individual net incomes. A.C. Bailey & W.G. Van Dorn, Taxation § 8:10, at 322 (4th ed. 2000). See *Farrell Enters., Inc.* v. *Commissioner of Revenue,* 46 Mass. App. Ct. 564, 568 (1999).

See Treas. Reg. § 1.1502-24 (a).[4] In this way, "deductions otherwise attributable to one member (say, for a charitable contribution) can offset income received by another (from a capital gain, for example)." *United Dominion Indus., Inc.* v. *United States*, 532 U.S. 822, 826 (2001).

In its brief, FMR raises three main arguments. First, it claims that the board's rejection of what FMR calls the "Federal deduction rule" as outlined above is contrary to the controlling statutory language, to prior case law construing that language, and to the Legislature's purpose in enacting that language. Second, FMR contends that the combined return provisions of G. L. c. 63, § 32B, and the commissioner's regulation interpreting the statute, fail to justify disregarding the reliance of § 30 (4) on Federal tax concepts. Finally, FMR claims the board erred by relying on case law applying the NOL provisions of § 30 (5).[5]

FMR insists that the controlling issue here is not how to interpret the provisions of § 32B, but rather "what the definition of 'net income' in [§] 30 (4) means." Because G. L. c. 63, § 30 (4), bases the computation of a corporation's "net income" on the deductions that "are allowable under the provisions of the Federal Internal Revenue Code," FMR contends the deductions used for Massachusetts corporate excise tax purposes therefore must be identical to the deductions used to compute Federal taxable income — in this case, those taken into account in the consolidated return. As support for its position, FMR cites several cases in which a Massachusetts tax concept is defined with reference to the Federal concept. See, e.g., *General Mills, Inc.* v. *Commissioner of Revenue*, 440 Mass. 154, 171 (2003) (holding that gain from deemed sale of assets should have been included in Massachusetts gross income because it was includable in Federal gross income); *Commissioner of*

---

[4]The Federal regulation technically refers to a five per cent limitation, which was in effect prior to a 1981 amendment to the Internal Revenue Code increasing the limitation to ten per cent. Pub. L. 97-34, § 263 (a), 95 Stat. 172 (1981). See Treas. Reg. § 1.1502-24 (a)(2). "The Treasury's relaxed approach to amending its regulations to track [I.R.C.] changes is well documented." *United Dominion Indus., Inc.* v. *United States*, 532 U.S. 822, 836 (2001).

[5]Because we conclude that the plain meaning of G. L. c. 63, § 32B, requires affirmation of the board's decision, we need not address this last argument.

*Revenue* v. *Franchi*, 423 Mass. 817, 823 (1996) (noting that adoption of Federal interpretation of statutory term is appropriate where corresponding Massachusetts tax law specifically refers to that interpretation); *Parker Affiliated Cos.* v. *Department of Revenue*, 382 Mass. 256, 263 (1981) (asserting that State policy was to use literal Federal gains figure as base for its own calculations).

Massachusetts courts and the board have ruled that Federal tax concepts are not always dispositive of the interpretation of Massachusetts corporate excise statutes. See *Rohrbough, Inc.* v. *Commissioner of Revenue*, 385 Mass. 830, 832 (1982) (stating that gross income on Federal return will not always be same for State tax purposes); *Weston Marketing Corp.* v. *Commissioner of Revenue*, 16 Mass. App. Tax Bd. Rep. 76, 80 (1994); *T.H.E. Inv. Corp.* v. *Commissioner of Revenue*, 8 Mass. App. Tax Bd. Rep. 12, 15 (1986). Indeed, some of the cases cited by FMR make this very point. See *Commissioner of Revenue* v. *Franchi, supra* ("This court has consistently adhered to the meaning of Federal tax language incorporated into our tax law *where no contrary legislative intent is apparent*" [emphasis added]); *Parker Affiliated Cos.* v. *Department of Revenue, supra* at 261 ("The consistent inclusion of a Federal tax benchmark has not restrained a Legislature from carving out peculiar variations to further the State's tax policies"). See also *Farrell Enters., Inc.* v. *Commissioner of Revenue*, 46 Mass. App. Ct. 564, 572 (1999) (citing *Parker* as support for the position that Massachusetts "is not required to follow Federal procedure" with respect to corporate losses). The board concluded that net income is a "Massachusetts-specific concept," and thus "[F]ederal tax concepts are not persuasive authority in determining the amount of a charitable contributions deduction for 'net income' purposes."

Moreover, the board points out that while Federal law often guides Massachusetts as to recognition of income, see *General Mills, Inc.* v. *Commissioner of Revenue, supra* at 171; *Johnson* v. *Department of Revenue*, 387 Mass. 59, 61 (1982), the same is not necessarily true for authorization of deductions. See *Macy's East, Inc.* v. *Commissioner of Revenue, ante* 797, 803 (2004), citing *Bill DeLuca Enters., Inc.* v. *Commissioner of Revenue,*

431 Mass. 314, 325 (2000), and *Farrell Enters., Inc.* v. *Commissioner of Revenue, supra* at 572. "Deductions are to a large extent a matter of legislative grace. The burden is on a taxpayer seeking a deduction to point to a particular statutory provision which authorizes the deduction." *Drapkin* v. *Commissioner of Revenue*, 420 Mass. 333, 343 (1995).

Here, FMR points to G. L. c. 63, § 30 (4), and its explicit reliance on Federal tax concepts as authorization for the deduction at the consolidated level. FMR claims that the board's focus on § 32B was "misplaced," because that statute "says nothing at all about how the income and deductions used in computing a corporation's net income are to be determined." It is true that § 32B is silent as to how to calculate deductions. However, it refers to § 38, which governs determination of net income. Section 38, in turn, refers to "[n]et income as defined in section thirty of this chapter . . . ." G. L. c. 63, § 38 (*a*). "[W]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975), and cases cited. See *Parker Affiliated Cos.* v. *Department of Revenue, supra* at 262. Calculation of net income under § 30 (4) for a corporation filing a combined return therefore must take place in light of the legislative intent of § 32B.

The board ruled that the commissioner's regulation at 830 Code Mass. Regs. § 63.32B.1(7)(a) (regulation) "is consistent with the individual-entity approach to applying § 32B." See *Farrell Enters., Inc.* v. *Commissioner of Revenue, supra* at 571. We accord weight to administrative interpretations of the agency charged with interpreting a statute, if the regulation is reasonable and adopted contemporaneously with the enactment or amendment of the statute. See, e.g., *Lowell Gas Co.* v. *Commissioner of Corps. & Taxation*, 377 Mass. 255, 262 (1979).

According to the board, § 63.32B.1(7)(a)(1) "clarifies that Treas. Reg. § 1.1502-12 does not create a 'deduction' that is 'allowable' under the [Internal Revenue] Code in the determination of an individual entity's taxable net income pursuant to § 30 (4)." FMR disputes the effect of the regulation ascribed by the board, arguing that "[a]ll that the provision [§ 63.32B.1

(7)(a)] says is that a charitable contribution deduction should be taken into account in computing each member's net income." We think it says more than that. A sensible reading of § 63.32B.1(7)(a)(1) is that a deduction for charitable contributions should be accounted for when determining the "separate" taxable income of each group member. In other words, the deduction should be subtracted from the calculation of each corporation's gross income, before determining its taxable net income. See *Farrell Enters., Inc.* v. *Commissioner of Revenue, supra* at 567-568 (outlining procedure for determining separate net income, pursuant to § 32B). If the commissioner did not intend for such calculation to occur on an individual basis, there would be no reason to include the instruction that "[t]he net income of *each* corporation should, if necessary, be adjusted to compensate for any such federal modifications" (emphasis added). 830 Code Mass. Regs. § 63.32B.1(7)(a)(1). Moreover, we note that, if the Legislature had deemed the commissioner's interpretation to be contrary to its intent, it could have amended the statute because the regulation took effect in 1989. Significantly, it has not done so. See *Macy's East, Inc.* v. *Commissioner of Revenue, supra* at 808.

"A decision of the board will not be reversed or modified if it is based on substantial evidence and on a correct application of the law." *Koch* v. *Commissioner of Revenue*, 416 Mass. 540, 555 (1993), and cases cited. We agree with the board that the method proposed by FMR for calculating the charitable contributions deduction is inconsistent with the plain language of G. L. c. 63, § 32B, which requires net income to be calculated on an individual-entity basis. The Federal Treasury regulations cited by FMR in support of its methodology, §§ 1.1502-12 and 1.1502-24, do not create a "deduction" allowable under the I.R.C., see G. L. c. 63, § 30 (4). Rather, they mathematically modify the deduction as provided under I.R.C. § 170. The result is a consolidated deduction that operates for purposes of the Federal consolidated group only. As indicated by the commissioner's regulation, 830 Code Mass. Regs. § 63.32B.1(7)(a), the Federal regulation simply does not apply to a calculation of the separately determined net income of

each member of the Massachusetts group, as mandated by § 32B. Cf. *Central & S. Cos.* v. *Weiss,* 339 Ark. 76, 85 (1999) (concluding that State legislative intent was to follow Federal concept of allowing deductions for charitable contributions to be taken at consolidated-entity level).[6]

*Decision of the Appellate Tax Board affirmed.*

[6]The Arkansas Legislature subsequently amended its statute to make I.R.C. § 170 expressly applicable to corporations filing an Arkansas consolidated corporate income tax return, "provided that each member of the affiliated group shall . . . *calculate its contribution limits separately* (emphasis added)." Ark. Code Ann. § 26-51-419 (b) (2003 Supp.). According to the 2001 session laws, the amendment was intended to reverse *Central & S. Cos.* v. *Weiss,* 339 Ark. 76 (1999), "which provided that the excess charitable contributions of one member of a consolidated group could be used to offset the taxable income of other members of the consolidated group." 2001 Ark. Acts 1227, § 2.